# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| FRED GRANT, JR., | : | |
| **Plaintiff,** | : | |
| v. | : | No. 5:15-cv-00256-MTT-CHW |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Fred Grant, Jr.'s application for benefits. 42 U.S.C. Section 405(g). Because substantial evidence supports the Commissioner's decision, it is **RECOMMENDED** that the decision be **AFFIRMED**.

## BACKGROUND

Plaintiff Fred Grant, Jr. filed an application for Disability benefits on September 2, 2011, (R. 153), alleging disability since August 1, 2008, due to learning, emotional, and behavioral problems. (R. 177). It was determined that Plaintiff suffers from Affective Disorders, ADD/ADHD, and Organic Mental Disorders but his claim was denied initially and on reconsideration. (R. 65, 73). A Hearing was held in front of Todd Spangler, an administrative law judge (ALJ), on July 19, 2013. (R. 35). The ALJ issued a decision denying Plaintiff's appeal on September 23, 2013, (R. 30), which the Administrative Appeals Council declined to review on April 29, 2015. (R. 1). Plaintiff now appeals to this Court.

**STANDARD OF REVIEW**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISABILITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."

*Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## THE MEDICAL RECORD

The medical record in this case begins on August 11, 2011, when Plaintiff was assessed for services at River Edge Behavior Health. (R. 330). Plaintiff was seeking treatment to improve his overall functional level and relief from thoughts of self-harm. (R. 330). At the initial evaluation, Plaintiff reported recent environmental stressors and feelings of depression and isolation. (R. 330). He had low energy, negative thoughts, difficulty sleeping, and loss of appetite, was easily angered, and was unable to get out of bed for days at a time. *Id*. Plaintiff was assessed with a depressed mental status including decreased concentration, interest, sleep, energy, and appetite. Plaintiff's overall mental status was remarkable and he suffered from auditory and visual hallucinations. (R. 331). He further reported attending special education classes during "most of school" and difficulty reading. (R. 332).

On August 26, 2011, Plaintiff returned to River Edge reporting increased symptoms incident to family difficulties. (R. 336). Plaintiff also reported prior depression, negative thoughts, and a diagnosis of moderate mental retardation. (R. 336). He was assessed with Major Depressive Disorder, ADHD, and his GAF was 45. (R. 338). Plaintiff reported a long history of mood swings, and it was determined that he did not fully understand his illness, but stabilization was expected with medication compliance. (R. 378). Three days later, on August 29, 2011, Plaintiff was admitted to the Medical Center of Central Georgia for suicidal ideations and depression. (R. 246). His documented medications included Abilify, Advil, Celexa, and trazodone, and his medical history included depression, bipolar disorder, and schizophrenia. (R. 247). Plaintiff was negative for illicit substances and had numerous abnormal lab values. (R.

252). On August 30 he was transferred to residential treatment at River Edge. (R. 285). Plaintiff's "active" medications included Ritalin, Celexa, Desyrel, and Abilify. Plaintiff's mood and affect were appropriate and he denied hallucinations. (R. 292). Plaintiff was advised about the importance of compliance with his medication and was discharged on August 31, 2011, after attending group sessions and being educated. (R. 294). The focus of his treatment included coping skills, MH Education, and personal safety. (R. 295). He was again assessed with Major Depressive Disorder and ADHD; his GAF was 40. (R. 298).

Plaintiff returned to River Edge for a follow up appointment on October 17, 2011. (R. 356). He was alert, cooperative, and calm although he had a depressed mood and auditory hallucinations. (R. 357). His major depressive disorder was considered "severe with psychotic features" and his GAF score was 45. (R. 359). On November 14, 2011, Plaintiff's Celexa prescription was increased, and he was placed on Risperdal for fatigue. (R. 360). Plaintiff was alert, cooperative and calm, but his affect was blunt, his mood was depressed, and his intellectual functioning was estimated to be below average. (R. 360 – 61). Plaintiff's diagnostic formulation included a diagnosis of moderate mental retardation and severe environmental stressors; his GAF score was 50. (R. 362.).

On November 18, 2011, Plaintiff underwent a psychological evaluation performed by Lisa K. Ellis, Ph.D and James DeGroot, Ph.D. (R. 263). Plaintiff's father assisted with paperwork due to Plaintiff's "poor reading and writing abilities." *Id*. He alleged "learning problems, emotional problems, and behavior problems" and an inability to work due to "general bad attitude, becoming easily frustrated, angry outbursts, verbal and physical aggressiveness, forgetfulness, as well as needing to have instructions and directions repeated." Plaintiff reported employment as a truck driver on and off since 2009, but was let go due to conflict. A subsequent

4

job on an assembly line only lasted a few weeks due to "being unable to keep up with the line." (R. 264). Plaintiff stated he was able to manage personal care issues and perform daily activities, but needed help managing his finances. He reported waking up around noon and going to bed at 10 p.m. (R. 265).

Plaintiff had normal motor behavior and a dysthymic mood. His orientation, speech, and language were within normal limits but his thought processes were slowed and his thought content was negative. (R. 266). His overall performance was impacted by fatigue, and although he was a reliable informant, Dr. DeGroot opined that "he appeared to have limited motivation and as a result, test results are believed to be an underestimate of his current intellectual functioning." *Id*.  Plaintiff was administered the Wechsler Adult Intelligence scale, which resulted in a full scale IQ of 55. His "word reading and math scores fell in the Extremely Low range." (R. 267). Plaintiff fell in the low range (3.1 percentile) on the Bender Visual Motor Gestalt Test. Dr. DeGroot diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Moderate by history"; "Attention Deficit Hyperactivity Disorder, Inattentive type (compensated with medications);" and deferred diagnoses on his intellectual functioning.  (R. 268).

Dr. DeGroot opined:

> [Plaintiff] appears generally capable of understanding, remembering, and carryout most simple instructions. This ability however thought to be contingent on his adherence to his medical regimen. His ability to sustained focused attention required for task completion is thought to be contingent on adherence to his medications as well as fatigue and energy level. The claimant appears to be hypersensitive to perceived slights or criticism which may create problems in terms of interacting with coworkers and accepting constructive criticism from supervisors. His prognosis regarding symptoms of depression and ADHD is fair given his reported response to current treatment. The claimant's ability to adhere to a work schedule on a consistent basis is likely to be impacted by his hypersomnia. His ability to adhere to production norms is contingent on a number of factors including motivation, fatigue, and being able to understand instructions. He is likely to perform best if given oral instructions. He would also benefit from being placed in a work setting with low demand/low stress and a lenient

5

supervisor. Given few coping skills, the claimant is deemed a mild risk for decompensation when faced with stressful situations. Given his limited experience managing finances, the claimant would benefit from securing a payee to manage his funds if benefits are awarded.

(R. 268).

Plaintiff returned to River Edge in February 2012, reporting clinical depression and failure to comply with his medications. (R. 364). His mood was depressed but his thought content was coherent and normal. (R. 365). In April, Plaintiff continued to be calm, cooperative, depressed, and blunted; his GAF was 50. (R. 444, 446). In May 2012, Plaintiff still hoped to see an improvement in his depression, anxiety, mood swings, and hallucinations. (R. 433). Plaintiff was prescribed Artane in September 2012. (R. 470). In December 2012, he continued to be depressed but coherent, alert, and calm. (R. 461). His Risperdal was decreased, Cogentin was increased, and he was continued on Buspar and Celexa. (R. 462). In May 2013, he reported increased depression, anxiety, and hallucinations. (R. 490). In July 2013, when the record ends, Plaintiff reported "feeling more depressed and [he] continue[d] to hear voices and see things." (R. 522). He remained calm, alert, and cooperative with a depressed mood and delusional thought content. (R. 523). Plaintiff's "medical decision making" was rated as "low complexity" due to "two + chronic stable illnesses"[1] *Id*. He was also not oriented to month, day of week, year, or able to name the current U.S. president. (R. 504).

When Plaintiff was eight years old he underwent a psychological evaluation. His school referred him for the evaluation because:

> [He] is unable to organize himself enough to do his work. He is unable to stay with a task more than five minutes without causing some disturbance (hitting someone or dropping all his materials).

---

[1] "Low Complexity" was also described as "two or more self limited or minor problems; One stable chronic illness." (R. 504).

6

(R. 419). An IQ test performed by the school the previous year had determined his IQ to be 85, and the psychological evaluation put his IQ at 82, low average. (R. 420). Plaintiff was developmentally behind with visual-motor skills, general comprehension, judgment and reasoning. His vocabulary and verbal fluency was age appropriate, but he had short-term visual memory and auditory sequential memory problems. Delays in visual-motor integration and fine motor skills led the examiner to opine that Plaintiff suffered from neurological dysfunction. Plaintiff's "reading recognition and spelling achievement levels [were] significantly low and indicate[d] a disability." "His arithmetic achievement [was] also below expectancy but not to a significant degree."  The examiner concluded that Plaintiff functioned at the low average range, but had the potential for average functioning at least. Plaintiff had reading and spelling disabilities and was recommended for "the SLD program." (R. 420 -21).

## DISABILITY EVALUATION IN THIS CASE

Based on the forgoing medical record, and following the five-step sequential evaluation process, the ALJ made the following findings in this case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2008. (R. 22). At step two, the ALJ found that Plaintiff suffered from the following severe impairments, "affective disorder and panic disorder with agoraphobia."  The ALJ further found that:

> The claimant's ADHD, ADD, and supposed psychotic symptoms – considered alone and in combination with all medically determinable conditions – no more than minimally limit the performance of basic work activity and, therefore, do not constitute severe impairments.

(R. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 23). The ALJ assessed Plaintiff's RFC and determined that Plaintiff could "perform a full range of work at all exertional levels involving 1, 2, or 3-step instructions performed in an environment

7

characterized by no more than occasional contact with co-workers and supervisors, no contact with the public, and in which changes are infrequent and gradually introduced. (R. 24). At step four, the ALJ determined that Plaintiff could not perform past relevant work as a truck driver but could perform work as a "janitor, farm laborer, packer, material handler, and production worker." (R. 28). Thus, the ALJ determined that Plaintiff was not disabled from August 1, 2008, through the date of the decision. (R. 19).

## ANALYSIS

In this appeal, Plaintiff disputes the ALJ's findings in a Psychiatric Review Technique Form ("PRTF"). "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis in his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000)). Pursuant to the PRTF mode of analysis, an ALJ must assess a Plaintiff on four functional areas, including "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* (citing 20 C.F.R. 404.1520a). These four functional areas correspond to the requirements found in the Section 12.00 Listings for mental disorders. These listings are broadly divided into "paragraph A criteria, which are a set of necessary medical findings; and [] paragraph B criteria" related to the four functional limitations. *Bellew v. Acting Com'r of Social Sec.*, 605 F. App'x. 917, 923 (11th Cir. 2015).

Using the PRTF method, the ALJ determined that Plaintiff "has no more than moderate limitations with activities of daily living and social functioning, as well as a marked restriction with concentration, persistence, and pace." (R. 23). The ALJ further found "neither allegation

8

nor independent evidence of repeated and extended periods of decompensation." At step four,[2] the ALJ's RFC findings were based on Plaintiff's level of daily activity, his social interactions, his past 10-year work history as a "commercially licensed truck driver," the "colloquial" record, Plaintiff's inconsistencies, and the objective medical record. According to the ALJ, these sources are inconsistent with Plaintiff's allegations.

Plaintiff argues that the ALJ's assessment of the evidence is not supported by the record. The ALJ determined that Plaintiff reported consistent control of his symptoms to his counselors at River Edge. The ALJ cites to numerous treatment notes in the record, but Plaintiff argues that neither the cited notes nor the record as a whole supports this finding. A thorough review of the record reveals that Plaintiff is correct in part. Substantial evidence supports the conclusion that Plaintiff provided consistent reports that his suicidal ideations, remarkable mental state, and command hallucinations were effectively controlled. Substantial evidence does not support the conclusion that Plaintiff provided consistent reports that his depression, anxiety, low energy, impaired attention span, and auditory hallucinations were controlled.

   i.   *River Edge Treatment Record*

Plaintiff began treatment at River Edge in 2011, where he displayed a "remarkable" mental status including depression, flat affect, worry, hallucinations, and suicidal ideations. These symptoms culminated with Plaintiff seeking emergency medical treatment for thoughts of self-harm. From 2012 to the end of the record, however, Plaintiff did not report suicidal ideations or command hallucinations to medical professionals, and he was not assessed with a remarkable mental state. Therefore, substantial evidence supports the ALJ's conclusion that these symptoms were effectively controlled by medication or otherwise resolved.

---

[2] The PRTF findings and the step four RFC findings are distinct but the PRTF results may be considered in the RFC.

Plaintiff also reported less extreme symptoms at his initial evaluation, including depression, anxiety, loss of sleep, and loss of appetite. By March 2012, he had experienced a reduction in the severity of each. (R. 365). The record documents similar reports in April and May,[3] (R. 441, 444), but the symptoms returned in August. Plaintiff's reported level of depression increased back to 10/10 in August 2012, and he gave equivocal answers concerning auditory hallucinations.[4] (R. 486). In September, his auditory hallucinations allegedly returned and he further reported "seeing shadows," paranoia, poor appetite, and trouble sleeping. (R. 473, 475). In December 2012, Plaintiff continued to report hearing voices, but denied visual hallucinations. (R. 461). He complained of low energy and impaired attention span. (R. 461). Auditory hallucinations, enervation, and poor appetite continued in May 2013, and Plaintiff rated his depression and anxiety at 10/10. (R. 496, 502, 504). Plaintiff's next and last treatment was in July 2013. He reported auditory and visual hallucinations, increased depression, insomnia, and low energy. (R.552). Therefore substantial evidence does not support the conclusion that Plaintiff consistently reported effective management of his depression, anxiety, auditory hallucinations, poor appetite, and lethargy.

ii.   *Harmless Error*

The Eleventh Circuit has long recognized that the harmless error standard applies in social security cases. See *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Carson v. Comm. of Soc. Sec. Admin.*, 300 F. App'x 741 (2008) (erroneous finding of fact harmless because record ddid not indicate that it affected ALJ's decision); *Colon ex rel. Colon v. Comm. of Soc. Sec.*, 2011 WL 208349 (11th Cir. 2011) (error harmless given that substantial evidence supported Plaintiff's ability to perform past relevant work). Plaintiff argues that the ALJ's

---

[3] Plaintiff's GAF score rose to 50 in November 2011 and February. (R. 362, 446, 359).
[4] From May 2012 to the end of the record Plaintiff's GAF score went back to 45. (R. 439, 463, 478, 488, 509, 513, 528).

misreading of the record was not harmless because he failed to resolve conflicts in the evidence and failed to state findings adequate for review of the decision. Because the ALJ adequately considered the severity of symptoms Plaintiff alleged and had good cause to discredit them, the ALJ's RFC is supported by substantial evidence and any misstatement of the record was harmless.

First, the ALJ determined that Plaintiff's level of treatment was inconsistent with the severity of symptoms alleged. The record supports this conclusion as Plaintiff was primarily treated through outpatient counseling sessions scheduled to coincide with medication refills. By 2012, Plaintiff was being seen once every two to three months during fifteen minutes sessions and was taking Risperdal, Cogentin, Buspar, and Celexa.

Second, the ALJ determined that Plaintiff reported contradictory levels of activities and limitations. For example, at the administrative hearing, Plaintiff denied being capable of performing simple tasks like making his bed (R. 43) but his family stated that he made his bed at home and worked on cars and trucks. (R. 44).  Plaintiff reported being unable to go shopping, (R. 44) but his family previously reported Plaintiff shopped for truck and car parts. (R. 170). Plaintiff testified that he was not allowed to cook at home, but his family previously reported Plaintiff grilled food on a barbeque twice a week. (R. 169). Plaintiff testified that he heard voices commanding him to harm himself, but he denied command hallucinations since early 2012. (R. 49). Plaintiff testified that he cannot drive, but stated on his work history report that he worked as a truck driver for 10 years.[5] His duties included "writing" and "complet[ing] reports." (R. 183 - 84). These contradictions constitute good cause to discredit Plaintiff's allegations.

---

[5] Plaintiff reported to his counselors at River Edge that he was unable to work as a truck driver because his license was suspended for delinquent child support . (R. 336, 371, 385).

In addition to finding Plaintiff's allegations inconsistent with his reported level of daily activities, the ALJ found those daily activities to be consistent with only moderate or marked limitations. Substantial evidence supports this conclusion. Plaintiff or his family stated that Plaintiff barbequed twice a week, worked on cars, shopped, managed welfare benefits, drove a car, and engaged in various social activities including romantic relationships, family get-togethers, and talking on the phone every day. The ALJ further noted that Plaintiff had a history of semiskilled employment as a truck driver, is capable of paying bills, and was described as "lik[ing] to be a part of whatever going on."[6] (R. 172).

Third, substantial evidence supports the ALJ's conclusion that the objective medical evidence did not support Plaintiff's claims. Dr. DeGroot determined that Plaintiff was being successfully treated by his medications and was "generally capable of understanding, remembering, and carryout most simple instructions." Dr. DeGroot cautioned that Plaintiff's abilities were contingent on medication compliance and opined that Plaintiff would do best in a low demand/low stress position with a lenient supervisor. Plaintiff also reported to Dr. DeGroot that he did not experience hallucinations and that his medication was effectively managing his ADHD and depressive symptoms. Plaintiff easily establishes a rapport, and he maintained appropriate eye contact. Plaintiff's "counselors" at River Edge observed him to be alert[7], oriented, neat, calm, cooperative, and coherent during most visits. His functional status was evaluated as "moderate," as he was withdrawn and conflicted but could "maintain[] control of any impulsive or abusive behaviors." (R. 380). Plaintiff was also considered to be able to maintain concentration. (R. 522).

---

[6] Plaintiff reported his abilities and skills as disc jockey and carpentry and stated that he was dependable. (R. 377).
[7] On the treatment forms, "alert" is contrasted with "drowsy," and Plaintiff was routinely considered alert.

Finally, the ALJ afforded "determinative weight" to Dr. Henson and Dr. Register, state agency reviewers, because their opinions were consistent with Dr. DeGroot, Plaintiff's level of daily activity, and his conservative treatment at River Edge. Both doctors opined that Plaintiff could understand simple instructions, complete a normal work week, and interact appropriately with coworkers and supervisors on a limited basis. (R. 402). The decision to afford determinative weight to Dr. Henson and Register is supported by substantial evidence.

## CONCLUSION

The ALJ erroneously determined that Plaintiff "consistently" reported the effective management of his symptoms through medication. While Plaintiff reported consistent control of his most severe symptoms, his depression, lethargy, poor appetite, and hallucinations ebbed and flowed. Despite this erroneous factual finding, the ALJ's decision is supported by substantial evidence. The ALJ gave an adequate consideration of Plaintiff's allegations and found them inconsistent with his conservative treatment, the opinion of Dr. DeGroot, Plaintiff's level of daily activities, and his history of employment and successful relationships. The ALJ also explicitly considered and rejected the GAF scores the staff at River Edge assigned to Plaintiff, finding a "lack of corroborative clinical indicia." These sources and reasons provided good cause to discredit Plaintiff's allegations and substantial evidence supporting the ALJ's RFC. Therefore, the ALJ's erroneous assessment of the record was harmless. See *Brown v. Comm'r of Soc. Sec.*, 459 F. App'x 845 (11th Cir. 2012) (ALJ's erroneous finding that Plaintiff had not sought treatment for mental health issues harmless where remaining evidence provided substantial basis for ALJ's conclusion).

After a careful review of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file

written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED**, this 30th day of June, 2016.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge
